UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------------------- X

PLAMAR NAVIGATION LTD.,

        Plaintiff,

       -against-

TIANJIN SHENGJIA SHIPPING CO., LTD. a/k/a SHENGJZA (HONG KONG) SHIPPING AND TRADING CO., LTD., CHANGSHU NEW CHANGGANG TRADE CO. LTD., HANGZHOU HEAVY STEEL PIPE CO. LTD., HENGYANG STEEL TUBE GROUP INT'L TRADING INC., HUBEI XIN YEGANG CO., LTD. a/k/a HUBEI XIN YEGANG STEEL CO. LTD., JIANGSU CHANGSHU MARINE SHIPPING AGENCY CO. LTD., JIANGSU LIHUI IRON AND STEEL CO., LTD., JIANGSU PROS.A INT'L CO. LTD., JIANGYIN XINGCHENG SPECIAL STEEL WORKS CO., LTD., KUGLER HAAS, LALANI STEEL INC., FASTEN BLOC SHANGHAI IMP. AND EXP. CO., LTD., FASTEN GROUP IMP. AND EXP. CO. LTD., SUZHOU HUASHENG IMP. AND EXP. CO., LTD., SUZHOU SEAMLESS STEEL TUBE WORKS, VICTORY LOGISTICS INT'L CO., LTD., WUXI DINGYUAN PRECISION COLD DRAWN STEEL PIPE CO. LTD., WUXI TIAN LIANG FOREIGN TRADE CO. LTD., XIGANG SEAMLESS STEEL TUBE CO. LTD., XINYU IRON AND STEEL CORP. LTD., YANGZHOU LONGCHUAN STEEL TUBE CO., LTD., YIEH CORPORATION LTD. and YIZHENG HAITIAN ALUMINUM INDUSTRIAL CO., LTD.,

        Defendants.

--------------------------------------------------------------------------------- X

      09-cv-5447 (SHS)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO VACATE MARITIME ATTACHMENT

SCHIFF HARDIN LLP
Carl W. Oberdier (CO-4150)
coberdier@schiffhardin.com
Henry L. Mann
hmann@schiffhardin.com
900 Third Avenue, 23rd Floor
New York, NY 10022
(212) 753-5000

Of Counsel:

KING & WOOD
Ge Yan
Fang Rong
Yang Weiguo
Yang Jianyuan
Zhou Ning
Yan Yuan
Roger Hsieh
31/F, Office Tower A, Jianwai SOHO
39 Dongsanhuan Zhonglu, Chaoyang District
Beijing 100022   P.R. China

*Attorneys for Defendants Changshu New Changgang Trade Co. Ltd., Hengyang Steel Tube Group Int'l Trading Inc., Hubei Xin Yegang Co., Ltd., Jiangyin Xingcheng Special Steel Works Co., Ltd., Fasten Bloc Shanghai Imp. And Exp. Co., Ltd., Fasten Group Imp. and Exp. Co. Ltd., Suzhou Seamless Steel Tube Works,Wuxi Tian Liang Foreign Trade Co. Ltd., Xigang Seamless Steel Tube Co. Ltd, and Yieh Corporation Ltd.*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

STATEMENT OF FACTS .......................................................................................................... 5

    The Voyage of the M/V Temira ............................................................................................ 5

    Defendants' Shipment of Cargo Aboard the M/V Temira .................................................... 5

    Delay in Discharging the Cargo ............................................................................................ 6

    The Plamar/Tianjin Fixture Note .......................................................................................... 6

    The Numerous Other Fixture Notes ...................................................................................... 8

    The Bills of Lading .............................................................................................................. 10

    Plamar's Previous Action Against Tianjin .......................................................................... 11

    The Instant Action .............................................................................................................. 11

ARGUMENT ........................................................................................................................... 12

I.     THE ORDER OF ATTACHMENT MUST BE VACATED AS AGAINST
      XINGCHENG BECAUSE  IT IS REGISTERED TO DO BUSINESS IN NEW
      YORK ................................................................................................................................ 12

II.    PLAMAR HAS NOT STATED A *VALID PRIMA FACIE* MARITIME CLAIM
      AGAINST THE DEFENDANTS ...................................................................................... 12

      A.    Plaintiff Bears The Burden Of Proving Why The Attachment
          Should Not Be Vacated .......................................................................................... 13

      B.    The Plamar/Tianjin Fixture Note Was Not Incorporated into
          Defendants' Bills of Lading ................................................................................... 14

          1.    This Court Should Apply Chinese Or United States Law
               to the Issue of Incorporation .................................................................... 15

          2.    Under Either Chinese And U.S. Law, The Bills Of Lading
               Do Not Incorporate The Plamar/Tianjin Fixture Note ............................. 18

      C.    Incorporation Does Not Result In Reallocation Of The
          Charter's Obligations To The Cargo Shipper ........................................................ 20

**TABLE OF CONTENTS**
(continued)

**Page**

D.   The Duty to Stow and Discharge Cargo Is Not Delegable to Defendants ........... 21

E.   Plamar's Claim is Barred For Failure To Attempt To Assert A Lien Against the Cargo ................................................................................. 23

F.   Plamar Cannot Demonstrate Actual Damages to Support Its Claim ................... 24

CONCLUSION .................................................................................................................... 25

## TABLE OF AUTHORITIES

**Page**

### Cases

*Amoco Overseas Co. v. S.T. Avenger*,
387 F. Supp. 589 (S.D.N.Y. 1975) ........................................................................... 19

*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd.*,
460 F.3d 434 (2d Cir. 2006) .................................................................................... 13

*Associated Metals & Minerals Corp. v. M/V Arktis Sky*,
978 f.2D 47 (2d Cir. 1992) ...................................................................................... 22

*Associated Metals & Minerals Corp. v. M/V Arktis Sky*, 90-cv-4562,
1991 WL 51087 (S.D.N.Y. Apr. 3, 1991) .......................................................... 18-19

*Baja Ferries USA L.L.C. v. Calder Seacarrier Corp.*,
08-cv-6031, 2008 WL 4682504 (S.D.N.Y. Oct. 4, 2008) ........................................ 14

*Carbotrade S.p.A. v. Bureau Veritas*,
99 F.3d 86 (2d Cir. 1996) ................................................................................. 16, 17

*Centauri Shipping Ltd. v. Western Bulk Carriers KS*,
528 F.Supp.2d 197 (S.D.N.Y. 2007) .......................................................................... 2

*Continental Ins. Co. v. Polish Steamship Co.*,
346 F.3d 281 (2d Cir. 2003) ............................................................................. 18, 21

*D'Amico v. Mediterranean Pacific Line, Ltd.*,
1975 A.M.C. 98 (N.D.Cal. 1974) ............................................................................. 25

*Energy Transport, Ltd. v. M.V. San Sebastian*,
348 F.Supp.2d 186 (S.D.N.Y. 2004) ........................................................................ 21

*Fairmont Shipping (H.K.), Ltd. v. Primary Indus. Corp.*,
86-cv-3668, 1988 WL 7805 (S.D.N.Y. Jan. 25, 1988) ............................................ 19

*Fed. Ins. Co. v. M.V. Audacia*,
85-cv-2656, 1986 WL 574 (S.D.N.Y. Aug. 19, 1986) ............................................. 19

*Hawkspere Shipping Co. Ltd. v. Intamex S.A.*,
330 F.3d 225 (4th Cir. 2003) ........................................................................... 17, 19

*Hellenic Lines Ltd. v. Rhoditis*,
398 U.S. 306 (1970) ................................................................................................. 16

*Ibeto Petrochemical Industries Ltd. v. M/T Beffen*,
475 F.3d 56 (2d Cir. 2007) ...................................................................................... 21

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Imp. Exp. Steel Corp. v. Mississippi Valley Barge Line Co.*,
   351 F.2d 503 (2d Cir. 1965)................................................................. 18, 20

*Lauritzen v. Larsen*,
   345 U.S. 571 (1953)........................................................................... 15, 16

*MacSteel Int'l USA Corp. v. M/V Jag Rani*,
   02-cv-7436, 2003 WL 22241785 (S.D.N.Y. Sept. 30, 2003) ............................. 18, 21

*Maersk, Inc. v. Neewra, Inc.*,
   443 F. Supp. 2d 519 (S.D.N.Y. 2006)................................................................ 14

*MTO Maritime Transport Overseas, Inc. v. Umm al Jawaby Petroleum Co., N.V.*,
   624 F. Supp. 272 (D.P.R. 1985), *aff'd*, 804 F.2d 773 (1st Cir. 1986) ...................... 24

*Navision Shipping A/S v. Yong He Shipping (HK) Ltd.*,
   570 F. Supp. 2d 527 (S.D.N.Y. 2008).............................................................. 14

*Nichimen Co. v. M. V. Farland*,
   462 F.2d 319 (2d Cir. 1972)......................................................................... 22

*OGI Oceangate Transp. Co. Ltd. v. RP Logistics PVT. Ltd.*,
   06-CV-9441, 2007 WL 1834711 (S.D.N.Y. June 26, 2007) ................................. 13

*P.R. Ports Auth. v. Barge KATY-B*,
   427 F.3d 93 (1st Cir. 2005)........................................................................... 13

*Padre Shipping Inc. v. Yong He Shipping*,
   553 F. Supp. 2d 328 (S.D.N.Y. 2008).............................................................. 13

*Penguin Maritime Ltd. v. Lee & Muirhead Ltd.*,
   588 F. Supp. 2d 522 (S.D.N.Y. 2008).............................................................. 13

*Production Steel Co. of Ill. v. SS Francois L. D.*,
   294 F.Supp. 200 (S.D.N.Y. 1968)................................................................... 20

*Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*,
   991 F.2d 42 (2d Cir. 1993)........................................................................... 21

*Romero v. Int'l Terminal Operating Co.*,
   358 U.S. 354 (1959).................................................................................... 15

## TABLE OF AUTHORITIES
(continued)

**Page**

*Royal Swan Navigation Co. v. Global Container Lines*,
    868 F. Supp. 599 (S.D.N.Y. 1994)......................................................................... 13

*Sealord Marine Co., Ltd. v. American Bureau of Shipping*,
    F. Supp. 2d 260 (S.D.N.Y. 2002)......................................................................... 16

*Skou v. United States*,
    478 F.2d 343 (5th Cir.1973) ............................................................................... 25

*SNC S.L.B. v. M/V Newark Bay*,
    111 F.3d 243 (2d Cir. 1997)................................................................................ 22

*State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld*,
    921 F.2d 409 (2d Cir. 1990)................................................................................ 16

*State Trading Corp. of India, Ltd. v. Grunstad Shipping Corp.*,
    582 F. Supp. 1523 (S.D.N.Y. 1984)..................................................................... 19

*Steel Warehouse Co. Inc. v. Abalone Shipping Ltd.*,
    141 F.3d 234 (5th Cir. 1998) .............................................................................. 17

*STX Panocean (UK) Co., Ltd. v. Glory Wealth Shipping Pte. Ltd.*,
    560 F.3d 127 (2d Cir. 2009)................................................................................ 12

*Sucrest Corp. v. M/V Jennifer*,
    455 F. Supp. 371 (D. Me. 1978) ................................................................... 7, 22

*Thyssen, Inc. v. Calypso Shipping Corp., S.A.*,
    310 F.3d 102 (2d Cir. 2002)................................................................................ 21

*Tubacex, Inc. v. M/V Risan*,
    45 F.3d 951 (5th Cir. 1995) ................................................................................ 22

*Unitas Finance Ltd. v. Di Gregorio Navegacao, Ltda.*,
    99-cv-1233, 1999 WL 33116415 (D.N.J. Nov. 8, 1999)..................................... 14

*United Shipping Servs. Three, Inc. v. U.S. Express Lines, Ltd.*,
    98-cv-950, 1998 WL 770599 (E.D.Pa. Nov. 5, 1998) ........................................ 14

*United States Barite Corp. v. M.V. Haris*,
    534 F. Supp. 328 (S.D.N.Y. 1982)....................................................................... 19

*Usinor Steel Corp. v. M/V Konigsborg*,
    03-cv-4301, 2004 WL 230910 (S.D.N.Y. Feb. 6, 2004) ..................................... 21

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer,*
515 U.S. 528 (1995)..................................................................................... 22

*Volgotanker Joint Stock Co. v. Vinmar Intern. Ltd.,*
01-cv-5064, 2003 WL 23018798 (S.D.N.Y. Dec. 22, 2003).................................... 21

*Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd.,*
475 F. Supp. 2d 275 (S.D.N.Y. 2006)................................................................. 14

**Other Authorities**

1 Thomas J. Shoenbaum, ADMIRALTY AND MARITIME LAW
§ 10-15 (4th ed. 2004).................................................................................. 22

2A BENEDICT ON ADMIRALTY
§ 184 (7th ed. 2002) ..................................................................................... 19

Chartering Abbreviations – Terms & Definitions, http://freightagents.net/resources/
chartabb.htm................................................................................................... 8

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188(2) ......................................... 16

**Rules**

Federal Rules of Civil Procedure 12(b) .................................................................. 14

Hague Rules, Art. 3, Sec. 2 ................................................................................. 22

Hague Rules, Article 3, Section 8.......................................................................... 22

International Convention for the Unification of Certain Rules of Law relating to
Bills of Lading, Art. 1(a)...................................................................................... 7

Defendants Changshu New Changgang Trade Co. Ltd. ("Changshu"), Hengyang Steel Tube Group Int'l Trading Inc., Hubei Xin Yegang Co., Ltd., Jiangyin Xingcheng Special Steel Works Co., Ltd. ("Xingcheng"), Fasten Bloc Shanghai Imp. and Exp. Co. Ltd., Fasten Group Imp. and Exp. Co. Ltd., Suzhou Seamless Steel Tube Works, Wuxi Tian Liang Foreign Trade Co. Ltd., Xigang Seamless Steel Tube Co. Ltd, and Yieh Corporation Ltd. ("Defendants") respectfully submit this memorandum of law in support of their motion to vacate the Supplemental Rule B maritime attachment dated July 8, 2009 (the "Order of Attachment") obtained by Plaintiff Plamar Navagation Ltd. ("Plamar"). For the reasons explained herein, the attachment should be vacated in its entirety as against these Defendants.[1]

## PRELIMINARY STATEMENT

The Order of Attachment cannot be sustained for two reasons: **First**, as Plamar should have known, one of the Defendants, Xingcheng, is registered to do business in New York. As a *per se* matter of law, therefore, Xingcheng is "found in the District" and immune from maritime attachment. Yet, Plamar's counsel incorrectly asserted in a sworn affidavit to this Court that none of the Defendants could be found in the District, and that Plamar had "checked the New York State Department of Corporations' online database, which showed no listings or registration for these Defendants." *See* Compl. Ex. 26, ¶ 2. In fact, that database reveals that Xingcheng has been registered to do business in New York since November 25, 2008. Oberdier

---

[1] Submitted in support of Defendants' motion are Declarations from the following representatives of the Defendants: Deng Gang ("Deng Decl."); Jiang Yunhu ("Jiang Decl."); Li Yu ("Li Decl."); Peng Wei ("Peng Decl."); Qu Ke ("Qu Decl."); Shi Xiaodong ("Shi Decl."); Sun Jiabin ("Sun Decl."); Xu Quisong ("Xu Decl."); Zhou Yuhua ("Zhou Decl."); Declarations from the following representatives of non-party shipping agencies: Tang Yinqiu ("Tang Decl."); Yang Guoxian ("Yang Decl."); Lu Xujie ("Lu Decl."); Zheng Fengyong ("Zheng Decl."); Wang Jian ("Wang Decl."); the Expert Declaration of Huang Tao ("Huang Decl."); and the Declaration of Carl W. Oberdier ("Oberdier Decl.").

Decl. Ex. 1.[2]  Courts in this District treat such misconduct by maritime plaintiffs as serious and

potentially sanctionable.  *See, e.g., Centauri Shipping Ltd. v. Western Bulk Carriers KS*, 528

F.Supp.2d 197 (S.D.N.Y. 2007) (where plaintiff's counsel incorrectly stated in a sworn statement

that defendant was not registered to do business in New York, Court considered imposing

sanctions *sua sponte* but decided not to solely because *sua sponte* sanctions, unlike sanctions on

motion, require a finding of bad faith).  The Order of Attachment must be vacated as against

Xingcheng.

     **Second**, Plamar plainly has no "*prima facie* valid maritime claim" against any of the

Defendants, as the Second Circuit requires to sustain an attachment.  In short, Plamar is asserting

a contract claim against Defendants that were never parties to the contract nor, for that matter,

even aware of it.  Plamar, a shipowner that chartered its vessel to a Chinese shipping company

for a cargo voyage from China to Italy, seeks contractual compensation that it is allegedly owed

under its charter contract – called a "fixture note" – with that shipping company.  Plamar claims

that under this fixture note, it is owed roughly $3.5 million in "detention charges" and "port

expenses" because of a three-month delay in the return of the vessel to Plamar following the

conclusion of the voyage.  The delay was caused by unusual difficulties in unloading the cargo

(34,000 metric tons of mainly round steel bars), which the stevedores at the Italian port

determined had been improperly and dangerously stowed, either by Plamar or the charterer.

     All this might amount to a *prima facie* claim against the charterer.  However, Plamar,

which tried and failed in an earlier lawsuit to recover from the charterer, now seeks to recover

---

[2] To his credit, Plaintiff's counsel sent a letter to the garnishees withdrawing the attachment promptly upon being informed of his error, but only after $83,428 of Xingcheng's assets had been improperly and unlawfully attached.  Xu Decl. ¶ 21.  Furthermore, to our knowledge, Plamar did not correct its misstatement to the Court or request that the Court vacate its Order of Attachment as against Xingcheng.

these amounts from the Defendants – land-based Chinese and Taiwanese steel manufacturers that shipped their cargo aboard Plamar's vessel under standard pre-printed bills of lading. These Defendant shippers were not parties to the fixture note; they were never even given copies of the fixture note nor informed of its terms. Nor did they have any responsibility for, or involvement in, the loading, stowing or unloading of the cargo. Plamar's claim is based on an utterly unsupportable legal theory that has never been adopted by any court: that the Defendant shippers are the ***guarantors*** of the ***charterer's*** obligations to Plamar under the fixture note, because the terms and conditions of the fixture note were allegedly incorporated into the Defendants' bills of lading.

Plamar's claim fails for the following reasons:

***First***, the Defendants' bills of lading did not incorporate the fixture note. The bills of lading did not identify any fixture note to be incorporated – the pre-printed spaces for such identification were intentionally left blank. Moreover, there were numerous other fixture notes that governed the voyage, because there were numerous subcharterers and sub-subcharterers with whom the charterer had contracted to find cargo for the voyage, with fixture notes between each.

Under well-settled law of the United States and China (which likely governs this dispute), a fixture note can be incorporated into a bill of lading only if that particular fixture note is explicitly and unambiguously identified on the face of the bill of lading and if the parties' intent to incorporate it is clearly manifested. When the parties to the bill of lading do not specifically identify the particular fixture note to be incorporated, particularly where there are multiple fixture notes and the cargo shipper was not aware of the terms of any, there simply can be no incorporation. *See* pp. 17-20, *infra*.

3

**Second**, even where a fixture note is incorporated into the bill of lading, that does not result in reallocating obligations and liabilities from the charterer to the cargo shippers. Rather, incorporation is applied only to import arbitration and governing law clauses from the fixture note into the bill of lading. We are aware of no cases in which incorporation operated to impose substantive obligations on the cargo shippers not found in the bill of lading. *See* pp. 20-21, *infra*.

**Third**, as the Second Circuit and Chinese courts have held, under the Rules of the Hague Convention that governs maritime shipping, responsibility for loading, stowing, and unloading the cargo is the duty of vessel owner or the charterer (defined, together, as the "carrier"), which cannot be transferred to the shipper. These duties, by law, could not have been assigned to the Defendants, nor could liability for their improper performance, as Plamar is attempting to do. *See* pp. 21-23, *infra*.

**Fourth**, the fixture note prohibits Plamar from asserting any claim for detention charges unless it first attempts to satisfy that claim by asserting a lien against the vessel's cargo. Plamar never attempted to assert any such lien. Plamar therefore has no claim for such detention charges. *See* pp. 23-24, *infra*.

**Fifth**, Plamar has failed to plead that it had any actual damages because of the delay – *i.e.*, that it had contracted for a subsequent charter of the vessel during that it was unable to fulfill. This Court has held that maritime detention charge provisions are unenforceable in the absence of actual damages to the ship owner. *See* pp. 24-25, *infra*.

Plamar's *ex parte* application for an attachment was based on a careless disregard for the facts and the law that did not comport with its heightened obligations of good faith and candor, which any plaintiff seeking an *ex parte* maritime attachment owes to the Court. As a result, over $1.6 million of the Defendants' assets have been unfairly and unlawfully attached, significantly

disrupting their businesses, impairing their credit, damaging their reputation, and forcing them to incur substantial costs, expenses and attorneys fees.  Moreover, Defendants have been forced to defend this action in a jurisdiction with absolutely no ties to this dispute, at significant cost and inconvenience.  This Court should immediately vacate the Order of Attachment.

## STATEMENT OF FACTS

### *The Voyage of the M/V Temira*

In September 2007, Tianjin Shengjia Shipping Co., Ltd. ("Tianjin"), a Chinese shipping company, chartered the commercial cargo vessel M/V Temira from its owner, Plamar.  Compl. ¶ 26.[3]  In October 2007, the Temira left the Chinese port of Changshu bound for the port of Ravenna, Italy.  It was carrying about 34,000 metric tons of steel bars and other steel products.  Compl. Ex. 1.  This cargo was being shipped by twenty Chinese and Taiwanese steel companies to various buyers in Italy, including the ten Defendants.  Compl. ¶ 29.

### *Defendants' Shipment of Cargo Aboard the M/V Temira*

The Defendants are unrelated steel manufacturers, exporters and importers located in different parts of China and Taiwan.  In the Summer of 2007, each of them independently entered into one or more steel purchase contracts with one or more Italian buyers.  Each Defendant then engaged a local Chinese shipping agency to arrange for the shipment of its cargo to Italy.  Each such shipping agency identified the M/V Temira as an acceptable option and arranged to ship the Defendant's cargo aboard that vessel.[4]

Each Defendant, after hiring its shipping agency, had no further involvement or responsibility for arranging the shipment.  None of the Defendants had any contact with either

---

[3] Tianjin is a named defendant in this action.  However, as explained below, Plamar does not appear to be presently pursuing any claim against Tianjin.

[4] Compl. ¶ 26; *See* Decls. of Xu and Deng ¶ 6; Decls. of Li, Peng, Qu, Shi, Jiang, Zhou, and Sun ¶ 5.

Plamar or Tianjin.  Each received the only following documents in connection with the shipment: (*a*) one or more bills of lading (depending on whether their cargo had been subdivided among multiple buyers), (*b*) in some instances, an agency contract with the local shipping company they had engaged, and (*c*) in some instances, a fixture note between the Defendant and such local shipping company.[5]

### *Delay in Discharging the Cargo*

When the M/V Temira docked in Ravenna on January 14, 2008, the stevedores determined that the cargo had been stowed unsafely and could not be unloaded without unacceptable risk to their persons.  Compl. ¶¶ 33-35.  There was a resulting delay of about 47 days in unloading the cargo – from January 14 until March 1, 2008.  Compl. ¶¶ 31, 37. However, Plamar elsewhere claims, without explanation, that, as a result of these difficulties, the vessel was detained at port for 139 days.  Compl. ¶ 36.

Defendants were not even informed during this time period of the difficulties in unloading the cargo, nor asked to do anything to assist.  Defendants had no responsibility under the bills of lading for loading, stowing, securing, or discharging the cargo.[6]

### *The Plamar/Tianjin Fixture Note*

As is conventional, all the material terms of the charter between Plamar and Tianjin were embodied in a contract between them called a "fixture note," dated September 28, 2007 (the "Plamar/Tianjin Fixture Note"). Compl. ¶ 26 & Ex. 1.  (A "charterparty" can also be used to embody the terms of the charter agreement between the vessel owner and charterer.  A

---

[5] Xu Decl. ¶¶ 7-8 and Ex. B; Qu Decl. ¶¶ 6-8 and Ex. B; Decls. of Shi and Sun ¶¶ 7-8; Decls. of Jiang, Zhou, and Li ¶¶ 6-7; Deng Decl. ¶ 10; Peng Decl. ¶¶ 8-9.

[6] Decls. of Li and Jiang ¶ 14; Decls. of Peng and Qu ¶ 16; Sun Decl. ¶ 17; Decls. of Zhou and Shi ¶ 15; Decls. of Xu and Deng ¶ 18.

charterparty is generally more extensive and detailed than a fixture note.)  Defendants were not

parties to the Plamar/Tianjin Fixture Note.  Indeed, they never even saw a copy of it until after

this dispute arose.[7]

Nevertheless, Plamar bases its claims against the Defendants on three particular terms in

the Plamar/Tianjin Fixture Note, as follows:

- FREIGHT : FIO US $ 87 PER MT FIOST L/S/D/LL BASIS 1/1 ON B(S)/L QTY
  (the "FIOST Provision") (Compl. ¶ 27)

- NORMAL L/S/D AND SEPARATION COSTS TB FOR SHPRS/CHRS ACCT. (the
  "L/S/D Provision") (Compl. ¶ 27)

- DETENTION CHARGE: USD 35000.00 PDPR IF CGO AND/OR CGO
  DOCUMENTS NOT READY BOTH ENDS (the "Detention Charge Provision")
  (Compl. ¶ 38)

The FIOST Provision stands for "Free In and Out Stowed and Trimmed."  It is a standard

shipping term meaning that the charterer, rather than the vessel owner, bears responsibility for

loading, securing, and unloading the cargo.  *Sucrest Corp. v. M/V Jennifer*, 455 F. Supp. 371,

381 n.17 (D. Me. 1978).  Under international treaty, the "carrier" – consisting of the vessel

owner and any charterers – always bears these responsibilities.  International Convention for the

Unification of Certain Rules of Law relating to Bills of Lading (the "Hague Rules"), Art. 1(a).[8]

The FIOST Provision merely assigns responsibility as between vessel owner and charterer to the

charterer.[9]

---

[7] Decls. of Jiang and Li ¶ 10; Decls. of Qu, Sun, Shi, Xu, and Zhou ¶ 11; Peng Decl. ¶ 12; Deng Decl. ¶
13.

[8] http://www.unidroit.info/program.cfm?menu=instrument&file=instrument&pid=29&lang
=en&do=fulltext

[9] Here, however, the Complaint is ambiguous as to whether the responsibility – or merely the expense –
of loading, securing, and unloading the cargo was allocated to Tianjin.  Paragraph 30 of the Complaint
recites that "*Plaintiff* properly loaded, stowed, carried and delivered all cargo . . . . (emphasis added),"
suggesting that while Tianjin may have borne the expense, Plamar retained responsibility for those
matters.  And, when the M/V Temira arrived in Italy, Plamar, not Tianjin, took responsibility for

The L/S/D Provision is also a standard provision and means that the charterer (and the cargo shippers, if the bills of lading so provide) will bear the normal costs of "L/S/D," which stands for "lashed/secured/dunnaged." Chartering Abbreviations – Terms & Definitions, http://freightagents.net/resources/chartabb.htm. "Lashing" refers to the materials, *e.g.* ropes or cables, used to tie down the cargo. "Secured" means the process of tying down the cargo and making it stable and secure. "Dunnaged" refers to materials, *e.g.*, wooden bars or planks, used to separate portions of the cargo so that they do not shift or damage each other. L/S/D thus refer solely to supplies and services needed to load and stow the cargo at the origination port – they have nothing to do with unloading the cargo.[10] The term "For SHPRS/CHRS ACCT" means that the charterer (or shippers) will bear only the expenses (not the responsibility) of these materials and services.

The Detention Provision is essentially a liquidated damages provision. It purportedly allows Plamar to charge Tianjin $35,000 per day for any delay in returning the vessel to Plamar, but only if such delay is because the cargo or cargo documentation is not ready. Compl. Ex. 1.

### *The Numerous Other Fixture Notes*

The Plamar/Tianjin Fixture Note was by no means the only fixture note that governed the M/V Temira's voyage to Italy. Rather, a multiplicity of fixture notes, between numerous parties, were executed in connection with the voyage. This is because Tianjin apparently did not task itself with identifying manufacturers who needed to ship steel to Italy, or with interacting and

---

negotiating the unloading of the cargo with the discharging port agent and stevedores, again suggesting that the FIOST term merely shifted the cost to Tianjin, while Plamar retained responsibility. *See* Compl. ¶¶ 33-36. **If so, Plamar is attempting to recover damages for a delay that was entirely its responsibility**.

[10]Plamar's Chinese counsel, in an ethically-dubious direct communication with the Defendants after Defendants' counsel had been retained in this matter and had communicated with Plamar's New York counsel, incorrectly contended that "L/S/D" meant "load, stowage and discharge." Oberdier Decl. Ex. 2.

contracting with such manufacturers. Rather, it subcontracted those tasks to several other shipping companies. Each of these shipping companies functioned as a subcharterer and executed its own fixture note with Tianjin. And, in certain instances, these subcharterers subcontracted even further, arranging to ship cargo through yet another intermediary shipping company. These intermediaries functioned as sub-subcharterers, and each executed yet another fixture note with the subcharterer above it.[11]

This chain of fixture notes extended all the way down to the shipping agencies that Defendants had engaged. Each of these agencies also executed a fixture note with the subcharterer or charterer with which it dealt directly.[12] Moreover, certain of the Defendants entered into their own fixture note with their shipping agency.[13] As a result, there was at least one additional fixture note – usually more – in the chain between each Defendant and the Plamar/Tianjin Fixture Note.

Other than the fixture notes that certain of the Defendants signed themselves, no Defendant was provided with a copy of any fixture note, including the Plamar/Tianjin Fixture Note, or was otherwise made aware of their terms, until after this dispute arose.[14]

---

[11]*See* Deng Decl. ¶¶ 14-17 & Exs. B, C; Jiang Decl. ¶¶ 11-13 & Ex. B; Li Decl. ¶¶ 11-13 & Ex. B; Peng Decl. ¶¶ 13-15 & Ex. B; Qu Decl. ¶¶ 12-15 & Exs. D, E; Shi Decl. ¶¶ 12-14 & Ex. B; Sun Decl. ¶¶ 12-16 & Exs. A-C; Xu Decl., ¶¶ 12-17 & Exs. B-E; Zhou Decl. ¶¶10-14 & Exs. B, C; Lu Decl. ¶ 3-6; Tang Decl. ¶ 4; Yang Decl. ¶ 5; Zheng Decl. ¶5; Wang Decl. ¶ 4.

[12]*See* Deng Decl. ¶15 & Ex. B; Jiang Decl. ¶ 12 & Ex. B; Li Decl. ¶ 12 & Ex. B; Peng Decl. ¶ 14 & Ex. B; Qu Decl. ¶ 13 & Ex. D; Shi Decl. ¶13; Sun Decl. ¶ 13 & Ex. A; Xu Decl. ¶ 13 & Ex. B; Zhou Decl. ¶ 13 & Exs. B, C.

[13]*See* Peng Decl. ¶ 4 & Ex. A; Zhou Decl. ¶ 4 & Ex A.

[14]*See* Deng Decl. ¶¶ 10-11; Jiang Decl. ¶¶ 7-8; Li Decl. ¶¶ 7-8; Peng Decl. ¶¶ 9-10; Qu Decl. ¶¶ 8-9; Shi Decl. ¶¶ 8-9; Sun Decl. ¶¶ 8-9; Xu Decl., ¶¶ 8-9; Zhou Decl. ¶¶7-8; Lu Decl. ¶¶ 3-6; Tang Decl. ¶ 4; Yang Decl. ¶ 5; Zheng Decl. ¶5; Wang Decl. ¶ 4.

### *The Bills of Lading*

Defendants' rights and obligations, as cargo shippers, were governed solely by the bills of lading issued to them. *See* Compl. ¶ 29, Exs. 2-23 (the "Bills of Lading").[15]  Each of these Bills of Lading was on a standard, pre-printed CONGENBill form. *See* Oberdier Decl. Ex. 3 (both sides of the CONGENBill form – only the front sides were attached to the Complaint).[16]

Plamar's claim against the Defendants rests entirely on its contention that all of the terms and conditions of the Plamar/Tianjin Fixture Note were incorporated by reference into each of these Bills of Lading.  Plamar relies on a portion of the general pre-printed language found on the back of each such bill:

> **All terms and conditions, liberties and exceptions of the Charter Party, *dated as overleaf*, including the Law and Arbitration Clause, are herewith incorporated.**

(Emphasis added.) The "overleaf" (or front side) of the bill of lading contained the following pre-printed language:

> **BILL OF LADING**
> **To Be Used With Charter Parties**

Toward the bottom of the front side of the bill was a pre-printed box stating:

> **Freight payable as per**
> **CHARTER-PARTY dated _____**

For every defendant in this action but one, however, these spaces on the front of the Bills of Lading for identifying the particular charter party to be incorporated were left blank.  Compl.

---

[15]*See also* Deng Decl. ¶ 10; Jiang Decl. ¶¶ 6-7; Li Decl. ¶¶ 6-7; Peng Decl. ¶¶ 8-9; Qu Decl. ¶¶ 6-7, 9 & Ex. C; Shi Decl. ¶¶ 7-8; Sun Decl. ¶¶ 7-8; Xu Decl., ¶¶ 7-8; Zhou Decl. ¶¶6-7.

[16]The CONGENBill form is a form of bill of lading commonly used in international shipping.  It is promulgated and recommended by The Baltic And International Maritime Council ("BIMCO").

Exs. 2-23.[17] The one exception were the Bills of Lading for Defendant Changshu. Plamar has produced a copy of such bills, dated October 12 and 15, 2007, in which the "freight clause" was filled in, stating "Freight payable as per CHARTER-PARTY dated 28th Sept. 2007" (the date of the Plamar/Tianjin Fixture Note). *See* Compl. Ex. 2. However, as both Changshu and its shipping agency have confirmed, this bill was never issued to Changshu. *See* Qu Decl. ¶¶ 9; Oberdier Decl. Ex. 4 (statement of Changshu's shipping agency). Several days later, on October 20, 2007, new bills of lading were issued directly by Tianjin to Changshu, in which the freight clause was also filled in, but referencing a different Charterparty, dated October 7, 2007. *See* Qu Decl. ¶¶ 6, 8 & Ex. C. Thus, none of the Defendants' Bills of Lading, including Changshu's, identified the Plamar/Tianjin Fixture Note as being incorporated by reference.

### *Plamar's Previous Action Against Tianjin*

On May 23, 2008, Plamar sought and obtained an *ex parte* order of attachment solely against Tianjin. In that action, Plamar contended that Tianjin alone was liable to Plamar under the Plamar/Tianjin Fixture Note for the Detention Charges and port expenses. *See Plamar Navigation Ltd. v. Tianjin Shengjia Shipping Co., Ltd.* (08-cv-4768 (SHS)). But Plamar was unsuccessful in attaching any of Tianjin's assets, so it discontinued that action.

### *The Instant Action*

On June 12, 2009, Plamar commenced the instant action, turning its sights on easier targets with readily attachable assets – the Defendant cargo shippers. Plamar sought and obtained an *ex parte* Order of Attachment against all the defendants. However, although Tianjin

---

[17]In its letter to the Defendants, Plamar's Chinese counsel also contended, falsely and inexplicably, that the bills of lading "**expressly** incorporated, by virtue of terms **on the front** and back, the terms of a charterparty dated 28 September 2007." Oberdier Decl. Ex. 2.

remains a defendant in this second action, Plamar still has not attached any of its assets, and is currently proceeding solely against the cargo shippers.

Pursuant to the Order of Attachment, Plamar has attached a total of $1.6 million in electronic funds transfers of the ten Defendants.[18]

## ARGUMENT

### I.    THE ORDER OF ATTACHMENT MUST BE VACATED AS AGAINST XINGCHENG BECAUSE IT IS REGISTERED TO DO BUSINESS IN NEW YORK

Under Supplemental Rule B(1)(a) & (b), a maritime attachment may not issue against a Defendant that is "found within the district." Defendant Xingcheng is registered as a foreign corporation in New York, with CT Corporation as its registered agent for service of process. Oberdier Decl. Ex. 1.  A corporation that is registered to do business in New York with an agent for service of process in the district is found within the district for purposes of a Rule B attachment.  *STX Panocean (UK) Co., Ltd. v. Glory Wealth Shipping Pte. Ltd.*, 560 F.3d 127, 133 (2d Cir. 2009).  The Order of Attachment must therefore be vacated as against Xingcheng.

### II.    PLAMAR HAS NOT STATED A *VALID PRIMA FACIE* MARITIME CLAIM AGAINST THE DEFENDANTS

The Order of Attachment must be vacated as against all the Defendants because Plamar does not have a valid *prima facie* admiralty claim against them, as required by the Second Circuit to maintain an attachment.  Plamar's claim that Tianjin's obligations under the Fixture Note were incorporated by reference into the Defendants' Bills of Lading, and that Defendants thereby became the guarantors of Tianjin's obligations, is unsupportable as a matter of law.

---

[18]*See* Deng Decl. ¶ 21; Jiang Decl. ¶ 17; Li Decl. ¶¶ 17-18; Peng Decl. ¶ 19; Qu Decl. ¶ 19; Shi Decl. ¶ 18; Sun Decl. ¶ 20; Xu Decl., ¶ 21; Zhou Decl. ¶ 18.

A.    **Plaintiff Bears The Burden Of Proving
Why The Attachment Should Not Be Vacated**

Maritime attachment is a draconian remedy. Without any prior hearing, it results in the freezing of a defendant's assets in a jurisdiction to which the defendant and attached assets have but the most ephemeral of ties. *See, e.g., OGI Oceangate Transp. Co. Ltd. v. RP Logistics PVT. Ltd.*, 06-CV-9441, 2007 WL 1834711, at *4 (S.D.N.Y. June 26, 2007). For this reason, once the defendant challenges the attachment, the plaintiff bears the burden of demonstrating that the attachment satisfies the filing and service requirements of Rules B and E, as well as the following requirements (known as the "*Aqua Stoli* factors"): "(1) it has a valid *prima facie* admiralty claim against the defendant; (2) the defendant cannot be found within the district; (3) the defendant's property may be found within the district; and (4) there is no statutory or maritime law bar to the attachment." *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006) (internal footnote omitted). The plaintiff's burden is demonstrating that the attachment was properly ordered is "considerable." *OGI Oceangate*, 2007 WL 1834711, at *4; *Aqua Stoli*, 460 F.3d at 445 & n.5.

To demonstrate that it has a valid *prima facie* admiralty claim, Plamar must set forth facts with heightened particularity in support of such claim. Supplemental Rule E(2)(a); *Penguin Maritime Ltd. v. Lee & Muirhead Ltd.*, 588 F. Supp. 2d 522, 526 (S.D.N.Y. 2008); *Padre Shipping Inc. v. Yong He Shipping*, 553 F. Supp. 2d 328, 332 (S.D.N.Y. 2008). This heightened pleading standard of Supplemental Rule E(2) "'is not some pettifogging technicality meant to trap the unwary, but, rather, a legal rule designed to counterbalance the unique and drastic remedies that are available in *in rem* admiralty proceedings.'" *OGI Oceangate*, 2007 WL 1834711, at *4 ((quoting *P.R. Ports Auth. v. Barge KATY-B*, 427 F.3d 93, 105 (1st Cir. 2005)); *Royal Swan Navigation Co. v. Global Container Lines*, 868 F. Supp. 599, 606 (S.D.N.Y. 1994)).

Moreover, Courts in this District routinely allow the defendant challenging an attachment to introduce evidence outside the complaint. *See, e.g.*, *Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd.*, 475 F. Supp. 2d 275, 279-79 (S.D.N.Y. 2006) (the court should determine whether the plaintiff has "reasonable grounds" for its claim by examining all the evidence submitted by the parties); *Maersk, Inc. v. Neewra, Inc.*, 443 F. Supp. 2d 519, 527 (S.D.N.Y. 2006); *Navision Shipping A/S v. Yong He Shipping (HK) Ltd.*, 570 F. Supp. 2d 527, 531 n.8 (S.D.N.Y. 2008); *Baja Ferries USA L.L.C. v. Calder Seacarrier Corp.*, 08-cv-6031, 2008 WL 4682504, at *3 n.4 (S.D.N.Y. Oct. 4, 2008).[19] Unlike on a Fed. R. Civ. Pro 12(b) motion to dismiss a complaint, inferences are not drawn in favor of the plaintiff; rather, the "evidence must be viewed in the light most favorable to the party whose property is attached." *Unitas Finance Ltd. v. Di Gregorio Navegacao, Ltda.*, 99-cv-1233, 1999 WL 33116415, at *1 (D.N.J. Nov. 8, 1999) (citing *United Shipping Servs. Three, Inc. v. U.S. Express Lines, Ltd.*, 98-cv-950, 1998 WL 770599, at *1 (E.D.Pa. Nov. 5, 1998).

For the reasons explained below, Plamar cannot demonstrate that it has a valid *prima facie* admiralty claim against the Defendants.

### B.     The Plamar/Tianjin Fixture Note Was Not Incorporated into Defendants' Bills of Lading

The obligations that Plamar seeks to enforce against the Defendants are not contained in the Bills of Lading – the only contracts to which the Defendants were parties. Rather, Plamar contends they are found in the Plamar/Tianjin Fixture Note, which it argues was incorporated by reference into the Bills of Lading. Compl. ¶¶ 27, 40, 43, 45. As described above, the provisions on which Plamar bases its claim are the FIOST and L/S/D Provisions, which Plamar contends

---

[19]As will be demonstrated, the insufficiency of Plamar's claim is evident solely from the face of its Complaint and attached exhibits, in light of applicable law. The evidence offered by Defendants with this motion is merely additional support for that conclusion.

exempt it from any responsibility for loading, stowing, or unloading the cargo, and the Detention

Charge Provision, which it contends entitles it to a $35,000 per day detention charge.  (*Id*.)

Plamar cannot credibly dispute that, if the Plamar/Tianjin Fixture Note was not incorporated by

reference into Defendants' Bills of Lading, Plamar has no claim against the Defendants.

> 1.    This Court Should Apply Chinese Or
>        <u>United States Law to the Issue of Incorporation</u>

The Defendants' Bills of Lading do not contain any governing law provision, except for

providing that the text of the Hague Rules apply.[20]  However, while the Hague Rules address the

parties' substantive obligations, they do not address issues of contract interpretation.  Likewise,

the Plamar/Tianjin Fixture Note contains no governing law clause.  *See* Compl. Ex. 1.  To

determine which law applies, therefore, this Court must apply applicable choice of law

principles.

In maritime contract disputes lacking any governing law provision, U.S. courts follow the

guidance of the Supreme Court in *Lauritzen v. Larsen*, 345 U.S. 571 (1953), as elaborated in

*Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354 (1959), and *Hellenic Lines Ltd. v.*

*Rhoditis*, 398 U.S. 306 (1970).  *See, e.g., Sealord Marine Co., Ltd. v. American Bureau of*

---

[20]This provision is found in Clause 2 (the "Paramount Clause") of each Bill of Lading, which is the
CONGENBill form.  *See* Oberdier Decl Ex. 3.  Clause 2(a) provides that the Hague Rules apply, either
in the form enacted by the country of shipment (China), or the country of destination (Italy).  If neither
country has enacted such Rules, then the text of the Hague Rules apply.  The Hague Rules are not
currently in force in either China or Italy.

Clause 2(b) requires the application of the Hague-Visby Rules (a 1968 update of the Hague Rules) if
such Rules are "compulsory" by their terms.  Article X of the Hague-Visby Rules provides that the
Hague-Visby Rules are compulsory if the country of shipment is a contracting state.  *See*
http://www.unidroit.info/program.cfm?menu=instrument&file=instrument&pid=27&lang=
en&do=fulltext (text of Hague-VisbyRules)  Here, the country of shipment, China, is not a contracting
state.  *See* http://www.unidroit.info/program.cfm?menu=contractingstates&file=instrument&pid=27&
lang=en&do=states.  Thus, Clause 2(b) does not mandate application of the Hague-Visby Rules to the
bills of lading.

Accordingly, under Clause 2 of the bills of lading, the Hague Rules apply.

*Shipping*, F. Supp. 2d 260, 266 (S.D.N.Y. 2002).  The *Lauritzen* factors are (1) the place of the wrongful act, (2) the law of the ship's flag, (3) the domicile of the injured party, (4) the domicile of the ship owner, (5) the place of contract, (6) the inaccessibility of the foreign forum, and (7) the law of the forum.  *Id*.  These are non-exhaustive factors, and their weight depends on the particular circumstances of the case.  *Carbotrade S.p.A. v. Bureau Veritas*, 99 F.3d 86, 90 (2d Cir. 1996).

However, because *Lauritzen* was a tort case, and its factors are more relevant in that context, the Second Circuit and other U.S. courts have applied additional factors in maritime contract disputes.  *See State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld*, 921 F.2d 409, 417 (2d Cir. 1990) (citing to the factors contained in RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188(2):  (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation, and place of business of the parties).  Such tests, however, all revolve around the *Lauritzen* principle of "ascertaining and valuing points of contact between the transaction and the states or governments whose competing laws are involved."  *Id*. (quoting *Lauritzen*, 345 U.S. at 582).

Here, the *Lauritzen* and Restatement factors do not point to any single country, but they generally favor application of Chinese law.  The place of the alleged wrongful act by Defendants (their failure to pay the claimed detention charges and port expenses) occurred in China, as did the likely cause of the stevedores' refusal to discharge the ship (improper stowage of the cargo).  The law of the ship's flag is Panama.  *See* Oberdier Decl. Ex. 5.  The domicile of the allegedly injured party and ship owner, Plaintiff, is Cyprus.  The place of the contract is China, since the Bills of Lading were executed there.  The sixth factor, the inaccessibility of the forum, is

irrelevant because the attachment at issue is in the Southern District of New York. *See Carbotrade*, 99 F.3d at 91. The law of the forum, the United States, points towards application of U.S. law.

Applying the Restatement factors, the Bills of Lading were entered into and negotiated in China. The relevant performance and subject matter of the contract (payment by the Defendants of the claimed charges and expenses) was to be in China. The domicile, residence, nationality, place of incorporation, and place of business of the parties are China and Cyprus. Among the various nations involved, China clearly has the greatest connection with the Bills of Lading subject to the present dispute. Similarly, the Bills of Lading themselves favor the law of the country of shipment. *See* p. 15, n.20, *supra*. All these factors argue for application of Chinese law to the issue of incorporation.

On the other hand, in similar cases, several United States Courts have applied U.S. law to the issue of incorporation. The present dispute relates specifically to the device of maritime attachment under Supplemental Rule B. The attachments occurred with respect to electronic funds transfers passing through U.S. banks. In similar maritime cases, U.S. courts have applied the law of the forum to the question of incorporation by reference. *See Steel Warehouse Co. Inc. v. Abalone Shipping Ltd.*, 141 F.3d 234, 238 (5th Cir. 1998) (applying U.S. law); *see also Hawkspere Shipping Co. Ltd. v. Intamex S.A.*, 330 F.3d 225, 234 n.4 (4th Cir. 2003) ("United States maritime law governs the issue of whether a charter party has been properly incorporated into a bill of lading").

In any event, under both U.S. and Chinese law, the Plamar/Tianjin Fixture Note plainly was not incorporated into the Bills of Lading. And, even if it had been, it would not have resulted in transferring Tianjin's obligations under such Note to the Defendants.

2.      Under Either Chinese And U.S. Law, The Bills Of
        <u>Lading Do Not Incorporate The Plamar/Tianjin Fixture Note</u>

Under Chinese law, a bill of lading can incorporate a fixture note only if the face of the

bill of lading explicitly identifies the fixture note to be incorporated and unmistakably indicates

which provisions of such note are to be incorporated.  Huang Decl. ¶¶ 6-19.  This rule is

embodied both in Article 95 of the Peoples Republic of China Maritime Law ("Maritime Law"),

and two rulings by the Supreme People's Court, China's highest court.  *Id*. & Exs. 3-5.

Under U.S. law, it is equally well settled that in order to effectively incorporate a charter

party, "the bill of lading must 'specifically refer[] to a charter party' and use 'unmistakable

language' indicating that it is incorporated."  *Continental Ins. Co. v. Polish Steamship Co.*, 346

F.3d 281, 283 (2d Cir. 2003) (*quoting Imp. Exp. Steel Corp. v. Mississippi Valley Barge Line

Co.*, 351 F.2d 503, 506 (2d Cir. 1965).  In determining whether a charter party is specifically

identified, the bill of lading should be "carefully if not restrictively construed."  *Id*.

Here, the Bills of Lading, except for Defendant Changshu's, did not identify any charter

party: the spaces on the pre-printed bill for identifying a charter party were left blank.  *See*

Compl, Exs. 3-23.  Under the well-settled laws of both China and the United States, those Bills

of Lading did not incorporate the Plamar/Tianjin Fixture Note or any other fixture note.  Huang

Decl. ¶ 13; *see also MacSteel Int'l USA Corp. v. M/V Jag Rani*, 02-cv-7436, 2003 WL

22241785, at *3 (S.D.N.Y. Sept. 30, 2003) (a standard CONGENBILL form failed to incorporate

a charter party where the pre-printed clause "freight payable as per CHARTER-PARTY dated

_____" was filled in only with the words "AS PER RELEVANT"); *Associated Metals &*

*Minerals Corp. v. M/V Arktis Sky*, 90-cv-4562, 1991 WL 51087, at *3 (S.D.N.Y. Apr. 3, 1991)

(same, where the words were "AS AGREED"); *Hawkspere*, 330 F.3d at 233-34 ("Courts

consistently hold that attempts to incorporate a charter party into a bill of lading are ineffective

when the spaces in the bill that would have identified the charter party are left blank.") (*citing* 2A BENEDICT ON ADMIRALTY § 184 at 17-62 (7th ed. 2002)); *Fairmont Shipping (H.K.), Ltd. v. Primary Indus. Corp.*, 86-cv-3668, 1988 WL 7805, at *3 (S.D.N.Y. Jan. 25, 1988); *Fed. Ins. Co. v. M.V. Audacia*, 85-cv-2656, 1986 WL 574, at *2 (S.D.N.Y. Aug. 19, 1986); *United States Barite Corp. v. M.V. Haris*, 534 F. Supp. 328, 330 (S.D.N.Y. 1982).

Moreover, here there were multiple fixture notes, some of which were between the Defendants and their shipping agents, and others of which were between Defendants' shipping agents and other subcharters or charterers. *See* pp. 9-10, *supra*. Any of these would be as likely candidates for incorporation as the Plamar/Tianjin Fixture Note, which was never even provided to the Defendants until after this dispute arose. *See* p. 10, *supra*. In these circumstances, U.S. courts have consistently rejected incorporation. *See, e.g., Hawkspere*, 330 F.3d at 234 (no incorporation where there were multiple charter parties and the bill of lading did not identify any of them in particular); *State Trading Corp. of India, Ltd. v. Grunstad Shipping Corp.*, 582 F. Supp. 1523, 1525 (S.D.N.Y. Apr. 13, 1984) (no incorporation where the bill holder had neither knowledge nor notice of the charter party) (quoting *Amoco Overseas Co. v. S.T. Avenger*, 387 F. Supp. 589, 593 (S.D.N.Y. Jan. 16, 1975)); *see also* Huang Decl. ¶ 18.

Neither was the Plamar/Tianjin Fixture Note incorporated by reference into Changshu's Bills of Lading, under either Chinese or U.S. law. In an identical case, where a fixture note was identified by date in the CONGENBill freight clause, China's Supreme People's Court explicitly ruled that such fixture note was incorporated only for the purpose of calculating freight, and that none of the other terms of the fixture note were incorporated. Huang Decl. ¶ 10 & Ex. 4. Moreover, because there were two bills of lading involving Changshu's cargo, but the later bill – and the only one actually issued to Changshu – identified a different fixture note than the

Plamar/Tianjin Fixture Note, both Chinese and U.S. law hold that the Plamar/Tianjin Fixture Note was not incorporated. *Id.* ¶ 17; *Imp. Exp. Steel Corp.*, 351 F.2d at 506 (finding that later-issued bills of lading superseded the original bills of lading).

     C.     **Incorporation Does Not Result In Reallocation**
              **Of The Charterer's Obligations To The Cargo Shipper**

Plamar's claim fails for an additional reason. As a matter of law, the incorporation of the Plamar/Tianjin Fixture Note, even if effective, would not have made the Defendants the guarantors of Tianjin's obligations under the Fixture Note. Plamar contends that because Tianjin was obligated for loading, stowing, and unloading the cargo, and because it was liable for Detention Charges if the vessel was detained, the Defendants are liable as guarantors or co-obligors for these obligations by virtue of incorporation. This theory is absolutely without any precedent or support in the law.

Incorporation of a charter party into a bill of lading does not impose new substantive obligations on the cargo shipper or make it the guarantor of the charterer's obligations. *See Production Steel Co. of Ill. v. SS Francois L. D.*, 294 F.Supp. 200, 201 (S.D.N.Y. 1968) (the purpose of a clause in a bill of lading stating: "SUBJECT TO ALL TERMS, CONDITIONS AND EXCEPTIONS OF CHARTER PARTY . . ." "was not to impose upon [the consignee] the obligations and rights of the parties to the charter party but to insure [sic] that the shipper and consignee would assume whatever risks or losses might be sustained by them as a result of the exercise by [ship owner and charterer] of their rights under the terms of the charter party."). Provisions in the fixture note that explicitly apply to the parties to the fixture note are not incorporated. *See Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 47-48 (2d Cir. 1993) (arbitration provision that was narrowly drawn to apply only to disputes between the vessel owner and the charterer was not incorporated into the bill of lading).

Rather, in every case in which incorporation was found, it had the sole effect of importing generic provisions, such as governing law and dispute resolution provisions, to "flesh out" the existing substantive terms of the bills of lading. *See, e.g.*, *Ibeto Petrochemical Industries Ltd. v. M/T Beffen*, 475 F.3d 56, 63 (2d Cir. 2007); *Continental Ins.*, 346 F.3d at 283 (discussing incorporation of the arbitration clause of a charter party into a CONGENBill bill of lading); *Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 103 (2d Cir. 2002) (same); *Energy Transport, Ltd. v. M.V. San Sebastian*, 348 F.Supp.2d 186, 205 (S.D.N.Y. 2004) (same); *Usinor Steel Corp. v. M/V Konigsborg*, 03-cv-4301, 2004 WL 230910, at *1 (S.D.N.Y. Feb. 6, 2004) (same); *Volgotanker Joint Stock Co. v. Vinmar Intern. Ltd.*, 01-cv-5064, 2003 WL 23018798, at *2 (S.D.N.Y. Dec. 22, 2003) (same); *MacSteel*, 2003 WL 22241785, at *1 (same).

Thus, there is simply no authority for imposing Tianjin's substantive obligations under the Plamar/Tianjin Fixture Note on the Defendants, even if the Fixture Note had otherwise been incorporated into the Bills of Lading.

> ### D.    The Duty to Stow and Discharge Cargo Is Not Delegable to Defendants

Moreover, the Hague Rules and Chinese and U.S. law would invalidate any contractual provision that purported to transfer responsibility or liability for loading, stowing, or unloading the vessel's cargo (including any detention charges arising from the performance of those duties) to the Defendant cargo shippers. Under the Hague Rules that govern the Bills of Lading, *see* p. 15 n.20, *supra*, the carrier [*i.e.*, the vessel owner or charterer] is responsible to "properly and carefully load, handle, stow, carry, keep, care for, and discharge the goods carried." Hague Rules art. 3, sec. 2.[21] As between the vessel owner and the charterer, the owner is normally

---

[21]The Hague Rules define "carrier" to include "the owner or the charterer who enters into a contract of carriage with a shipper." Hague Rules, art. 1.

responsible for loading, stowing, and discharging of cargo.  *See Nichimen Co. v. M. V. Farland*, 462 F.2d 319, 330 n.10 (2d Cir. 1972).  FIOST provisions (and similar FIOS and FIO provisions) are widely understood to allocate responsibility from the shipowner to the charterer – which, since both are within the "carrier" group, is permissible under U.S. and Chinese law.  *Sucrest Corp. v. M/V Jennifer,* 455 F. Supp. 371, 381 n.17 (D. Me. 1978); Huang Decl. ¶¶ 23-25 & Exs. 7-8.

However, it is clearly impermissible under the Hague Rules, as applied by Chinese and U.S. courts, for the ship owner to delegate responsibility or liability for loading, stowing, or unloading the cargo to the cargo shippers.  U.S. courts have consistently held that Article 3, section 8 of the Hague Rules, as adopted in the United States,[22] invalidates any terms in a bill of lading that shift the risk and expense of loading, stowing, and discharging cargo away from the carrier.  *See, e.g., Associated Metals & Minerals Corp. v. M/V Arktis Sky*, 978 F.2d 47, 49 (2d Cir. 1992); *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 956 (5th Cir. 1995); *Cf. Sucrest*, 455 F. Supp. at 381 n.17 ("these duties may be shifted contractually to the *charterer*") (emphasis added) (citing *Nichimen*, 462 F.2d at 330-31).  Any such terms are "directly contrary" to the Hague Rules (as implemented in 46 U.S.C. app. § 1303(8)).  *Associated Metals*, 978 F.2d at 49.  Chinese courts have also consistently enforced this prohibition under the Hague Rules.  ¶¶ 23-25 & Exs. 7-8.

Thus, because Plamar's against the Defendants relies upon an impermissible shifting of responsibility for stowing and discharging cargo, its claim is *prima facie* invalid and cannot sustain the Order of Attachment.

---

[22]The Hague Rules were enacted in the United States through COGSA.  *See Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 536-38 (1995); *SNC S.L.B. v. M/V Newark Bay*, 111 F.3d 243, 247 & n.10 (2d Cir. 1997); 1 Thomas J. Shoenbaum, Admiralty and Maritime Law § 10-15, at 649 (4th ed. 2004).

**E.    Plamar's Claim is Barred For Failure To
<u>Attempt To Assert A Lien Against the Cargo</u>**

Were the Fixture Note incorporated into the Bills of Lading, Plamar's claim for detention

charges against the Defendants would nevertheless be barred because of Plamar's failure to

comply with the Note's requirement that Plamar first attempt to satisfy such claim by asserting a

lien on the vessel's cargo.  *See* Huang Decl. ¶¶ 28-34 & Ex. 9.  The Fixture Note incorporates the

terms of GENCON 76, to the extent it is not inconsistent with specific terms of the Fixture Note.

This incorporation is provided for under the language "OTHERWISE AS PER GENCON 1976

CHARTERPARTY PFMA WITH LOGICAL AMENDMENTS/ALTERNATIONS." *See*

Compl. Ex. 1.

Clause 8 ("Lien Clause") of GENCON 76 provides as follows:

> **Owner shall have a lien on the cargo for freight, dead-freight,
> demurrage and damages for detention.    Charterers shall
> remain responsible for dead freight and demurrage (including
> damages for detention), incurred at port of loading.** *Charterers
> shall also remain responsible for freight and demurrage (including
> damages for detention) incurred at port of discharge, but only to
> such extent as the Owners have been unable to obtain payment
> thereof by exercising the lien on the cargo*.

See Huang Decl. Ex. 9 (copy of GENCON 76) (emphasis added).  Chinese courts and

commentators have interpreted Clause 8 according to its plain intent: that a vessel owner is

barred from asserting a claim for detention charges unless it has first attempted to exercise a lien

on the vessel cargo.  See Huang Decl. ¶¶ 31-32.

Here, Plamar did not attempt to satisfy its claim for detention charges and port expenses

by exercising a lien on the vessel's cargo.[23] It is therefore barred from asserting such claim by

---

[23]Decls. of Li and Jiang ¶¶ 15-16; Decls. of Zhou and Shi ¶¶ 16-17; Decls. of Peng and Qu ¶¶ 17-18; Sun
Decl. ¶¶ 18-19; Decls. of Xu and Deng ¶¶ 19-20.

the plain terms of the Fixture Note, whether against Tianjin or, by incorporation, against the Defendants.

### F.    Plamar Cannot Demonstrate Actual Damages to Support Its Claim

Finally, Plamar has failed to demonstrate that it has a *prima facie* claim of any actual damages, let alone the $3.5 million it claims in its Complaint.  Supplemental Rule B requires a plaintiff to make "a *prima facie* showing that [it] has a maritime claim against the defendant *in the amount sued for*." Supplemental Rule B advisory committee's note (emphasis added).  The facts asserted in the Complaint are full of gaps.  Plaintiff states that the vessel was berthed at the discharging port on January 14, 2008 and was informed on January 17, 2008 that the stevedore company refused to discharge the vessel due to unsafe stowage.  Compl. ¶¶ 31, 33. Plaintiff claims that discharge commenced on March 1, 2008, 47 days after berthing.  Compl. ¶ 37. Plaintiff then claims Detention Charges for an arbitrary period of 90 days, and does not allege any facts to support its entitlement to Detention Charges for such time period.  Compl. ¶ 47.

Likewise, Plaintiff makes no allegation that it suffered any actual loss or injury from the delay, such as any missed opportunities to charter the vessel on a new voyage.  Without any actual injury or loss, a ship owner cannot claim damages for detention charges.  *See MTO Maritime Transport Overseas, Inc. v. Umm al Jawaby Petroleum Co., N.V.*, 624 F. Supp. 272, 277 (D.P.R. 1985), *aff'd*, 804 F.2d 773 (1st Cir. 1986) (finding no liability for demurrage where the plaintiff failed to prove that it suffered any loss as a result of the delay, especially where there was no evidence that the ship was chartered for any further commercial voyages) (citing *Skou v. United States*, 478 F.2d 343, 345 (5th Cir.1973); *D'Amico v. Mediterranean Pacific Line, Ltd.*, 1975 A.M.C. 98 (N.D.Cal. 1974).  In the absence of any factual basis for its damages

claims, Plaintiff has failed to satisfy its burden to make a prima facie showing that it has a claim

against the Defendants in the amount sued for.

## <u>CONCLUSION</u>

For the foregoing reasons, the ex parte order of attachment should be vacated.

Dated: New York, New York
      September 10, 2009                    Respectfully submitted,


                                                SCHIFF HARDIN LLP


                                                 By:    /s/ Carl W. Oberdier
                                                     Carl W. Oberdier
                                                   Henry L. Mann
                                      900 Third Avenue
                                      New York, NY 10022
                                      (212) 753-5000

OF COUNSEL:

KING & WOOD
Ge Yan
Fang Rong
Yang Weiguo
Yang Jianyuan
Zhou Ning
Yan Yuan
Roger Hsieh
31/F, Office Tower A, Jianwai SOHO
39 Dongsanhuan Zhonglu, Chaoyang District
Beijing 100022   P.R. China