UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
PLAMAR NAVIGATION LTD.,                                    :    09 Civ. 5447
(SHS)
                                                           :
                        Plaintiff,                         :    ECF CASE

        - against -

TIANJIN SHENGJIA SHIPPING CO., LTD. a/k/a
SHENGJZA (HONG KONG) SHIPPING AND TRADING CO., LTD.,
CHANGSHU NEW CHANGGANG TRADE CO. LTD.,
HANGZHOU HEAVY STEEL PIPE CO. LTD.,
HENGYANG STEEL TUBE GROUP INT'L TRADING INC.,
HUBEI XIN YEGANG CO., LTD.
a/k/a HUBEI XIN YEGANG STEEL CO. LTD.,
JIANGSU CHANGSHU MARINE SHIPPING AGENCY CO. LTD.,
JIANGSU LIHUI IRON AND STEEL CO., LTD.,
JIANGSU PROS.A INT'L CO. LTD.,
JIANGYIN XINGCHENG SPECIAL STEEL WORKS CO., LTD.,
KUGLER HAAS,
LALANI STEEL INC.,
FASTEN BLOC SHANGHAI IMP. AND EXP. CO., LTD.,
FASTEN GROUP IMP. AND EXP. CO. LTD.,
SUZHOU HUASHENG IMP. AND EXP CO., LTD.,
SUZHOU SEAMLESS STEEL TUBE WORKS,
VICTORY LOGISTICS INT'L CO., LTD.,
WUXI DINGYUAN PRECISION COLD DRAWN STEEL PIPE
CO. LTD.,
WUXI TIAN LIANG FOREIGN TRADE CO. LTD.,
XIGANG SEAMLESS STEEL TUBE CO. LTD.,
XINYU IRON AND STEEL CORP. LTD.,
YANGZHOU LONGCHUAN STEEL TUBE CO., LTD.,
YIEH CORPORATION LTD. and
YIZHENG HAITIAN ALUMINUM INDUSTRIAL CO., LTD.,

                        Defendants.
------------------------------------------------------------X

## AFFIDAVIT IN OPPOSITION
## TO MOTION TO VACATE MARITIME ATTACHMENT

I, PLAMEN DIONISSIEV, SAY AS FOLLOWS:

1. I am Managing Director of Bulcom Limited who are Commercial Managers of Plamar Navigation.

2. I have personal knowledge of the facts and circumstances regarding the voyage of our vessel the M/V TEMIRA from China to Italy in 2007 while under charter to Tianjin Shengjia Shipping Company.

3. I also have personal knowledge of the practices and procedures of Plamar Navigation with respect to its involvement in the shipping industry as a vessel owner and carrier of cargoes for hire.

4. It is the custom and practice of Plamar Navigation to require use of Congenbill form bills of lading when chartering its vessels under voyage charter parties because under the Congenbill form the terms and conditions of the head voyage charter party entered into by Plamar Navigation will be incorporated into the bills of lading that are issued for the cargo carried aboard our vessel and in this way we are assured that we will not be subject to greater obligations under other contracts to which we are not a party.

5. When we fixed our vessel the M/V TEMIRA to Tianjin Shengjia under a fixture note dated September 28, 2007 for a voyage charter from China to Italy we did so on the express basis that all cargo carried aboard our vessel for this voyage would be set forth on a Congenbill form bill of lading and that the terms and conditions of our head fixture note would therefore be incorporated into the bill of lading.

6. We had been initially approached by Tianjin Shengjai with respect to our vessel in September 2007. We negotiated various terms and conditions for the vessel including, but not limited to, a $35,000 per day detention rate and allocation of responsibility for all L/S/D, FIOST

and separation costs all of which were agreed with Tianjin Shengjia in advance of the time when we formalized the fixture with Tianjin Shengjai on September 28, 2009.

7. We are always aware that Tianjin Shengjia were not chartering the M/V TEMIRA for its own account in order to ship its own cargoes aboard the vessel. Rather, we knew that Tianjin Shengjia was negotiating other sub charter parties with other parties that were either going to be shipping cargo for their own account or for principals who had appointed these other parties to obtain a vessel to transport cargo. This is a commonly understood arrangement in the shipping industry and the precise reason why Plamar Navigation requires use of a Congenbill form bill of lading in order to incorporate the terms and conditions by which it agrees to employ its vessel to those parties (i.e., shippers under bills of lading) who will be indirectly employing our vessel and deriving the benefit of the transportation of their cargoes. We were informed by Tianjin Shengjia that the shippers were made aware of the terms of the head fixture note and agreed to those terms.

8. At the time that our vessel the M/V TEMIRA encountered difficulty in discharging the cargo laden aboard her at Ravenna, Italy we undertook to obtain advice regarding our rights to secure the damages being incurred based on the vessel's lengthy time awaiting discharge of the shipper's cargo.

9. We were advised by Italian counsel that although the Gencon 1976 form charter party which was used to reach agreement with Tianjin Shengjia, and whose terms were included in the bills of lading issued to the shippers, had a lien clause that we would unable to enforce the lien against the cargo pursuant to Italian law. As a result, and based on our legal advice, we did not lien the cargo and thus also did not expose ourselves to potential claims for the cargo

consignees who we understand would have claimed against our company for unlawful detention of the cargo following discharge.

10. At the time the vessel was detained in Ravenna, Italy the shipping market for vessels like the M/V TEMIRA was robust and we could have engaged in further employment at the rate of USD 37,500 per day. However, because the vessel was detained with a full cargo load at Ravenna we could not agree to terms on further employment since in so doing we would have been unable to ensure we could place the vessel into the service of her next charterer unless we were reasonably certain when the cargo would be discharged. Also, since our fixture called for payment of $35,000 daily detention rate, which was lawfully contracted rate of liquidated damaged expressly designed to address the circumstance that did occur, we were, in some measure, protected from the vessel being without certain future employment.

11. After the cargo was finally discharged at Ravenna the M/V TEMIRA was next employed for a voyage charter at the rate of USD 35,000.00 per day and we have every confidence that had the TEMIRA not been detained at Ravenna due to the cargo discharge issues that she would have earned a reasonably similar rate of charter hire on a different fixture at an earlier time.

12. The facts set out in this affidavit are true to the best of my knowledge and belief.

I declare under penalty of perjury under the laws of the United States of America pursuant to 28 U.S.C. §1746 that the foregoing is true and accurate.

Executed on September 21, 2009 at Limassol, Cyprus

_21.09.2009_
Date

_[signature]_
Signature